Good morning. Caitlin Shortell for Lonnie White. Mr. White's appeal deals with two issues, and the first issue is sufficiency of evidence in the drug testing method that was used, and the second is chain of custody. First, I'd like to discuss the sufficiency of the evidence argument. Mr. White's argument is that the testing method used, which the two confirmatory tests that were used in this case, only sampling a tiny amount of the total sample of drugs that the statute charges him with a particular amount, violated the guarantee, the due process guarantee that a person cannot be convicted of a crime. Without proof of each element beyond a reasonable doubt. Doesn't Chapman permit that? Your Honor, I think that Chapman is a different situation here just in part because of the novelty of Mr. White's argument about the testing method. Chapman deals with whether or not the person can be charged with the weight of LSD on a paper blotter versus this case involving an allegation that there was no test to make sure that this sample of crack cocaine of a particular quantity had been tested throughout to see that it wasn't faux crack cocaine. And so I think that, and I also think that in recent cases in the Ninth Circuit that this court has recognized a requirement that the government prove drug quantity beyond a reasonable doubt. And some of this has, I wanted to add today to call a few cases to the court's attention that were not in the brief on this particular issue because of the government's argument and citation to the Toliver case. I believe that in the government's brief, the citation to the Toliver case was somewhat misplaced. The government contends that drug quantity in Toliver is not considered truly a critical element that needs to be proven beyond a reasonable doubt as in Ray Winship and Apprendi. However, in slightly different situations, this court has recognized a requirement that the government prove drug quantity beyond a reasonable doubt. In a case called United States versus Minori, which is 292 F3rd 1115, a 2002 case, this court found that where drug quantity exposes a defendant to a higher statutory maximum sentence than he could otherwise receive, drug quantity is the functional equivalent of a critical element. What do you mean by quantity here? I mean, we've got a statute that evaluates a mixture or substance containing a detectable amount of. The weight that matters is the whole thing. If you've got more than a detectable amount, the statute doesn't require you to prove more than 500 grams or whatever it is of the unlawful substance. It's talking about the whole thing. Is there any issue here that makes a difference with regard to what proportion of the whole thing is the unlawful substance? Your Honor, Mr. White's argument is essentially that that statute and the language of that statute is in conflict with the requirement that drug quantity is a critical element that must be proven beyond a reasonable doubt. Because the issue of what has to be proven beyond a reasonable doubt doesn't alter the criminal statutes themselves. It's who has to make the decision. The whole Apprendi line says certain decisions have to be made by the jury. But in this case, what the jury is being asked to decide is what's the weight of not the little part that might be the detectable amount of the drug, what's the weight of the whole thing? And my understanding is the jury was asked to determine that. They weren't asked and weren't required to under the statute to figure out what proportion of the whole thing was the unlawful substance. And we don't disagree with that and understand that it's a novel argument. However, it is our argument. Sometimes you've got to play the cards you're dealt. That's right. And so I also just wanted to, you know, to explore a little bit again what was the evidence that was presented on the drug quantity. In this case, we had the informant's testimony and some audio recordings. And these were not transparent or specific evidence of the actual weights of the drugs that were obtained through the two transactions at issue. And we have the drugs that were seized themselves. And these are the two transactions that became the basis of Counts 2 and 3 from May 22, 2007, and August 30, 2007. And Mr. White's contention is that that evidence was inadequate to prove beyond a reasonable doubt that those counts. And so also I wanted to just go back over the Tolliver case cited by the government again and how I feel that it's sort of a misplaced citation to this functional element phrase in Tolliver. Because Tolliver holds that drug quantity and type determinations are the functional equivalents of an element of a greater offense because they are facts that increase the statutory maximum. Tolliver is distinguishable from this case as it concerned a situation where the court properly complied with a prendy by instructing the jury to return special findings on quantity and drug type, but the jury was unable to reach a verdict on the question of drug type and quantity. There, and it was also a conspiracy case, defendants weren't entitled to acquittal and the court could determine type and quantity for applying sentencing guidelines so long as it didn't exceed statutory maximum sentence. So there are some differences there between Tolliver and this case. And I don't, and I guess I won't go back over the testing methods unless your honors have any question about that. The second issue in this case was a chain of custody issue that the drugs ended up being, upon analysis by the forensic scientists, inexplicably lighter than they were initially. And so Mr. White contends that the government failed to establish a chain of custody for these drugs. And the government in its brief stated a few cases that say that a mere inference of tampering is not enough to justify exclusion of evidence and that there has to be, that Mr. White would have to show affirmative evidence of bad faith in tampering. And so Mr. White, his position is that as a criminal defendant he's at a bit of a loss and doesn't have any way of showing the bad faith, affirmative evidence of bad faith that the government is stating is required. And therefore, he's, it's sort of a last, a gasp for this court to pay attention to something that's not explained by the government. I'm sorry, go ahead. Well, are you asking us to say that we're going to presume that if there's a drop in weight that there's been some kind of tampering? No, not at all, Your Honor, except in this case we cited in our brief to Mr. Palmer's answer to the question, could this be due to evaporation? And his answer was no. And so that indicates that something's wrong here. And further, we weren't contending that the difference in weight, excuse me, it wasn't possible that the difference in weight could have to do with the packaging either. And so the usual explanations don't fly, and otherwise Mr. White just doesn't have a basis to put forth in this. But isn't that something that the jury sorts out? Because Agent Eckstein testified that some of the substance could have evaporated. And he also noted that the FBI wastes substances in the packaging material. That's all. I mean, there were two views expressed, and the jury has to pick between them. And, Your Honor, it's Mr. White's submission that a reasonable jury couldn't have made the decision that they did, that there wasn't sufficient establishment of chain of custody. Okay. Thank you. Ms. White. May it please the Court. My name is Erin White, and I represent the United States in this case. As my colleague told the Court, which is correct, there are two issues in this case, and the issues turn on the sufficiency of the evidence. First, did we have sufficient evidence of the weight of the crack cocaine distributed by the appellant? Second, do we have sufficient evidence to establish the chain of custody? And the standard of review is actually one that favors the government in this case. The appellant needs to view, to make the argument that the evidence is insufficient, only if viewed in the light most favorable to the government. Or let me rephrase that. The issue is whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. And in this case, 12 rational triers of the fact found the sufficient elements beyond a reasonable doubt. With respect to the finding of the crack cocaine, we have controlled buys. The source is searched before the buy. We have audio and video recordings of the actual transactions. We have conversations about drug deals during those transactions. And at one point, the appellant indicates to the informant that you've given me too much peoples, which is a slang way of saying you've given me too much money for these drugs. And another buy, the appellant asks the informant, do you want me to put this in a sandwich bag, or do you want me to bag these up for you? And then the informant takes back to the FBI the wrapped up bagged cocaine, or, excuse me, crack cocaine. The most important error in the appellant's argument is his misconstruction of the statutory language. It is clear that if you look at the statute, 21 U.S.C. Sections 841, B1a and B1b, they refer to a mixture or substance containing a detectable amount of crack cocaine. And we've talked about the Chapman case. That case is similar to the case at Barr in Chapman. They have LSD that has been sprayed onto blotter paper, and the court talks about how the LSD is consumed frequently along with the blotter paper. And in the record in this case, Mr. Palmer talked about how crack cocaine is made. You essentially take baking soda and water and boil it down into one substance that becomes insoluble in water. In order to consume the crack, you need to consume the whole substance, which has been made from the baking soda, the cocaine, and the water. There is nothing to suggest that the government needed to prove anything more than that the substance contained a mixture or substance containing a detectable amount of crack cocaine. In this case, Mr. Palmer testified that the substances that he tested were homogenous in nature. It would not have been practical to pull them apart to do an independent analysis. And the appellant's argument simply increases the government's burden with respect to the statutory construction of 21 U.S.C. 841. Unless the court has any more questions on that issue, I will touch briefly on the evidence tampering allegation. Mere inference of tampering is not enough to justify exclusion of the evidence. The appellant would need to show affirmative evidence of bad faith or actual tampering. And if there is only a mere inference, it goes to the weight of the evidence rather than the admissibility. In this case, the agents and their forensic scientists provided clear testimony about the chain of custody. The agents talked about how they took possession of the purchased crack cocaine, processed it at the Anchorage FBI office. When they were on the stand, they recognized the exhibits from their dated markings and from their signatures on the seal. Their forensic scientists recognized the lab number, their initials, their barcode marking from the lab, and the date that they did not, that they opened the substances. I take it there was no evidence that the chain of custody had been broken. No, Your Honor. There was no evidence. And, in fact, the defendant or, excuse me, the appellant did not object to the admission of these drug exhibits. There is no indication from the evidence that this chain of custody was improperly handled. The appellant makes issue of the fact that the weight has changed from the time that it was seized from the informant to the time that it's weighed at the lab. And I agree with Justice or, excuse me, Judge O'Scallion, that Agent Eckstein did testify that he has 10 years of experience as an agent. And it's quite common for the weight to change from the time a substance is seized until it's weighed at the lab, especially when a longer period of time elapses. And evaporation is a common occurrence. And, also, when the FBI weighs the crack cocaine at the field office, they're usually doing it with the packaging material in order to preserve the substance for future testing at the lab. Which was what happened in this case. So there was no affirmative evidence of bad faith or tampering. And with respect to both of the issues before the court, it's clear that any rational trier, in fact, could have and, in fact, did find the essential elements of the crime met beyond a reasonable doubt. And unless the court has any further questions, I will ask that the court affirm the conviction and sentence in this case, and I will rely on the written briefs. Thank you. Your Honors, I only have a little less than a minute, and I just wanted to thank you and say that I don't have anything further, but I'm available for further questions if there are any. Further questions in this short time? Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton